E-FILED
Friday, 25 May, 2007  02:43:50 PM
Clerk, U.S. District Court, ILCD

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS
# SPRINGFIELD DIVISION

| | | |
|---|---|---|
| FREEMAN UNITED COAL MINING COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No.  07-3048 |
| UNITED MINE WORKERS OF AMERICA, et al., | ) ) ) ) | |
| Defendants. | ) | |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter comes before the Court on the Motions to Dismiss or to Transfer Venue (d/e 20, 21, 25) filed by Defendants United Mine Workers of America (UMWA), Bituminous Coal Operators' Association, Inc. (BCOA), United Mine Workers of America 1974 Pension Fund (1974 Pension Fund), and the 1974 Pension Fund's Trustees Michael H. Holland, Micheal W. Bruckner, Steven F. Schaab, and B.V. Hyler (collectively, the Trustees).  Beginning in January 2007, Plaintiff Freeman United Coal Mining Company (Freeman) refused to make contributions to the 1974 Pension Fund.  Freeman filed this action to seek a declaratory judgment that

its decision not to contribute to the 1974 Pension Fund is not a breach of any obligations under the following instruments: its collective bargaining agreement with the UMWA (Freeman Agreement), the 1974 Pension Fund Trust documents (1974 Pension Fund Trust), and the collective bargaining agreement called the National Bituminous Coal Wage Agreement (NBCWA) negotiated between the BCOA and UMWA. In the alternative, if Freeman is obligated to pay the pension contributions, Freeman seeks damages against BCOA because Freeman alleges that BCOA breached its duties as Freeman's agent in negotiating pension contribution rates in the latest version of the NBCWA.

The Defendants move to dismiss for lack of jurisdiction and for failure to state a claim. In the alternative, the Defendants ask the Court to transfer venue to the United States District Court for the District of Columbia. The parties have thoroughly briefed the issues, and thus, oral argument is unnecessary. The requests for oral argument are denied. For the reasons set forth below, the requests to dismiss the action are denied. This Court has subject matter jurisdiction to declare whether Freeman is in breach, and Freeman states a claim for damages.

The request to transfer this matter to the United States District Court

for the District of Columbia, however, is granted.  The 1974 Pension Fund and the Trustees have filed an action in the District of Columbia to collect the disputed contributions.  <u>Memorandum of Points and Authorities in Support of Joint Motion of the United Mine Workers of America 1974 Pension Trust and Michael H. Holland, Micheal W. Buckner, Steven R. Schaab and B.V. Hyler to Dismiss the Complaint or, in the Alternative, Transfer the Case (d/e 25)</u>, attached exhibit, <u>Complaint, Holland v. Freeman United Coal Mining Co., U.S. Dist. D.C., Case No. 07-00490 (D.C. Action Complaint)</u>.  The existence of the two separate actions is inefficient and creates the risk of inconsistent decisions.  As explained below, the District of Columbia is the more convenient forum, and is also a proper venue for both actions while this Court is not.  The Court, therefore, determines that this matter should be transferred to the District of Columbia.

<u>STATEMENT OF FACTS</u>

In approximately 1950, various coal mining companies formed BCOA as a not-for-profit corporation to negotiate a national multi-employer collective bargaining agreement with the UMWA.  <u>Complaint (d/e 1)</u>, ¶¶ 12-13.  The BCOA and the UMWA negotiated the first NBCWA in 1950 and renegotiated new NBCWAs periodically ever since.  The latest NBCWA

3

became effective in January 2007 (2007 NBCWA).  Part of those negotiations included the rate of pension contributions for employees covered by the NBCWA.  Id., ¶¶ 13-14.

In 1974, Congress enacted the Employee Retirement Income Security Act (ERISA).  29 U.S.C. § 1001 et seq.  The BCOA and the UMWA established a new pension fund at that time which became the 1974 Pension Fund.  The 1974 Pension Fund covered UMWA member employees who retired after December 30, 1975.  Id.  The original pension fund became known as the 1950 Pension Fund and covered employees who retired prior to December 31, 1975.  See United Mine Workers of America 1950 Ben. Plan and Trust v. Bituminous Coal Operators' Ass'n, Inc., 898 F.2d 177, 178 (D.C. Cir. 1990) (hereinafter UMWA v. BCOA).

At the time that the BCOA and the UMWA negotiated the 1978 NBCWA, the 1974 Pension Fund Trust was amended to include a clause that became known as the "Evergreen Clause."  The Evergreen Clause states:

> Any employer who employed any participant eligible for coverage under, or who received or receives benefits under, the 1974 Pension Plan, or any Employer who was or is required to make, or who has made or makes contributions to the 1974 Pension Plan and Trust, is obligated and required to comply with the terms and conditions of the 1974 Pension Plan and Trust, as amended from time to time, including, but not limited

to, making contributions required under the national
Bituminous Coal Wage Agreement of 1978, as amended from
time to time, and any successor agreements thereto . . . .

Complaint, ¶ 19.  The Evergreen Clause was incorporated by reference into

the 1978 NBCWA and every NBCWA negotiated thereafter.  United Mine

Workers of America 1974 Pension v. Pittston Co., 984 F.2d 469, 478-79

(D.C. Cir. 1993) (hereinafter Pittston).

The 1988 NBCWA included a clause called the Guarantee Clause.

UMWA v. BCOA, 898 F.2d at 178.[1]  The Guarantee Clause obligated the

coal mine operators to guarantee the benefits provided by the 1950 and

1974 Pension Funds (collectively the Pension Funds) and authorized the

BCOA to raise pension contribution rates as necessary to make sure that the

Pension Funds were properly funded.  Id.  The D.C. Circuit Court of

Appeals subsequently decided that through the Evergreen Clause and the

Guarantee Clause: (1) BCOA obligated itself to set funding rates to ensure

that the Pension Funds were properly funded; and (2) the covered coal mine

operators obligated themselves perpetually to pay the contributions

negotiated by the BCOA, even if the coal operator later left the BCOA and

---

[1]The Guarantee Clause may have been in the NBCWAs negotiated prior to the
1988 NBCWA.  The UMWA v. BCOA opinion is unclear on this point.

ceased to be a signatory to the then current NBCWA.  Pittston, 984 F.2d at 478-79; UMWA v. BCOA, 898 F.2d at 181-82.

Freeman joined the BCOA in 1967 and remained a member until 1997.  Since 1997, Freeman has negotiated a separate collective bargaining agreement with the UMWA (Freeman Agreement).  Complaint, ¶ 21.  The latest Freeman Agreement was negotiated in 2003 (2003 Freeman Agreement).  The 2003 Freeman Agreement contains the Guarantee Clause, which provides:

> Notwithstanding any other provisions in this Agreement the Employers participating in the 1950 Pension Fund and the 1974 Pension fund hereby agree to fully guarantee the pension benefits provided by these Funds during the term of this Agreement.

> In order to fully fund these guaranteed benefits, the BCOA may increase, not decrease (except as provided in Section (d)(1)), the rate of contributions to be made to the 1950 Pension Fund and the 1974 Fund during the term of this Agreement.  These contributions, which may be adjusted from time to time, shall be made by Freeman during the term of this Agreement.

Id., ¶ 22.  The Guarantee Clause in the 2003 Freeman Agreement appears to be the same as the one in the 1988 NBCWA, but the 1988 version of the Clause has not been provided to the Court.  At the time that the 2003 Freeman Agreement was negotiated, the contribution rate for the 1974

6

Pension Fund was $0.00.  Id., ¶ 23.  The 2003 Freeman Agreement remains in effect until 2008.  Id., ¶ 21.

Freeman alleges that the BCOA and UMWA authorized transfers of assets out of the 1974 Pension Fund to another UMWA health and welfare plan.  Freeman alleges that the transfers demonstrated no concern for the adequacy of the 1974 Pension Fund and that any shortfall is attributable, in part, to those transfers.  Id., ¶ 26.

Freeman also alleges that the BCOA substantially changed after Freeman negotiated the 2003 Freeman Agreement.  Freeman alleges that in 2003, the BCOA was a multi-employer bargaining unit that represented companies employing more than fifty percent of the unionized workforce in the bituminous coal industry.  Between 2003 and 2006, however, Freeman alleges that the BCOA stopped being a multi-employer bargaining unit.  Instead, the BCOA became controlled by one coal company, Consolidated Coal Company (Consol).  Freeman alleges that the BCOA now acts only in the interest of Consol.  Freeman alleges that the 2007 NBCWA, therefore, is not a successor multi-employer collective bargaining agreement to the previous NBCWAs, but is a single-employer collective bargaining agreement between the UMWA and Consol.  The 2007 NBCWA calls for payment of

7

contributions to the 1974 Pension Fund at the rate of $2.00 per hour.  The 2007 NBCWA further calls for those contribution rates to increase over the four-year life of the agreement to $5.50 per hour.  Freeman alleges that, because the 2007 NBCWA is not a successor agreement to the prior NBCWAs, Freeman is not obligated to comply with the terms of either the Evergreen Clause or the Guarantee Clause.  Id., ¶¶ 23-31.

Freeman alleges, in the alternative, that if it is obligated to make the contributions called for in the 2007 NBCWA, then the BCOA had a duty to act as the agent for all affected coal companies, including Freeman, when it negotiated the 2007 NBCWA with the UMWA.  Freeman alleges that the BCOA breached its duty to Freeman and the other coal companies by negotiating the increased pension contributions in the 2007 NBCWA purely for Consol's benefit.  Freeman alleges that the BCOA agreed to these contributions as an instrumentality of Consol for the purpose of damaging other competing coal companies, such as Freeman.  Freeman alleges that the method for calculating the contributions puts Consol's competitors, including Freeman, at a competitive disadvantage.  Id., ¶¶ 53-56.

Freeman, therefore, has refused to pay the contributions called for in the 2007 NBCWA.  The UMWA and the 1974 Pension Plan have

demanded that Freeman pay the contributions.  Freeman alleges that the demands expose it to the threat of litigation.  Id., ¶¶ 38-39.  Shortly after this action was filed, the 1974 Pension Fund filed the D.C. Action Complaint against Freeman and eight other coal companies to collect the contributions. The 1974 Pension Fund has now voluntarily dismissed all but three of the defendants from the D.C. Action.  Supplemental Response to Defendants' Motions to Dismiss and/or Transfer (d/e 42), at 2.  One of the remaining defendants in the D.C. Action is located in Virginia.  The other is an Illinois corporation that does business in this District in Macoupin County, Illinois.  Id.  Freeman asks this Court for a declaratory judgment that it is not obligated to pay the demanded pension contributions.  In the alternative, Freeman seeks damages against BCOA for breaching its agency relationship with Freeman and the other coal companies by negotiating the 2007 NBCWA solely for the benefit of Consol.

<u>ANALYSIS</u>

I.   <u>Motion to Dismiss</u>

For purposes of the Defendants' Motion to Dismiss for failure to state a claim, the Court must accept as true all well-pleaded factual allegations contained in the Complaint and draw all inferences in the light most favorable to Freeman.  <u>Hager v. City of West Peoria</u>, 84 F.3d 865, 868-69 (7th Cir. 1996); <u>Covington Court, Ltd. v. Village of Oak Brook</u>, 77 F.3d 177, 178 (7th Cir. 1996).  The Complaint should not be dismissed unless it appears beyond doubt that Freeman can prove no set of facts that would entitle it to relief.  <u>Doherty v. City of Chicago</u>, 75 F.3d 318, 322 (7th Cir. 1996).  The Court can look beyond the allegations for purposes of Defendants' Motion to Dismiss for lack of jurisdiction.  <u>Long v. Shorebank Development Corp.</u>, 182 F.3d 548, 554 (7th Cir. 1999).  Freeman has the burden to show that the Court has jurisdiction to hear the claim.  <u>United Phosphorus, Ltd. v. Angus Chemical Co.</u>, 322 F.3d 942, 946 (7th Cir. 2003). In this case, the Court has jurisdiction to hear the declaratory judgment action in Count I, and Count II states a claim.

A.   <u>Count I</u>

The Defendants argue that the Court lacks jurisdiction to hear

Freeman's declaratory judgment claim.  To determine jurisdiction for a declaratory judgment, this Court must look to the character of the threatened action to which the Plaintiff would interpose a defense.  <u>Textron Lycoming Reciprocating Engine Div., Avco Corp. v. United Automobile, Aerospace, Agricultural Implement Workers of America, International Union</u>, 523 U.S. 653, 658 (1998); 28 U.S.C. § 2201.  If the Court would have subject matter jurisdiction to hear the threatened action, then it has subject matter jurisdiction to hear the declaratory judgment action.  <u>Id.</u>, 523 U.S. at 658.

In this case, this Court would have subject matter jurisdiction under ERISA and the Labor Management Relations Act (LMRA), to hear an action by the 1974 Pension Fund and its Trustees to collect unpaid pension contributions.  29 U.S.C. §§ 141 <u>et</u> <u>seq.</u>, & 1001 <u>et</u> <u>seq</u>.  Indeed, the 1974 Pension Fund and the Trustees invoked federal jurisdiction based on both ERISA and the LMRA to bring the claims in the D.C. Action Complaint.  <u>D.C. Action Complaint</u>, ¶ 2.  This Court, therefore, has subject matter jurisdiction under LMRA § 301(a) to hear Freeman's claim for declaratory relief against the 1974 Pension Fund and the Trustees.  <u>Textron</u>, 523 U.S.

11

at 658.[2]

Similarly, the BCOA has a cause of action against Freeman under the LMRA for breach of the Evergreen Clause in the 1978 NBCWA by refusing to perform on its perpetual obligation to pay the pension contributions.  See Pittston, 984 F.2d at 479; 29 U.S.C. § 301(a).  The UMWA also could file an action against Freeman under the LMRA for breach of the Evergreen Clause in the 1978 NBCWA and the Guarantee Clause in the Freeman Agreement.  Freeman, thus, could seek the requested declaratory relief against the BCOA and UMWA in this Court.  The Court, therefore, has subject matter jurisdiction to hear Freeman's claim for declaratory relief in Count I.  The Court has supplemental jurisdiction to hear the claims against the BCOA in Count II.  28 U.S.C. § 1367.

The Defendants argue that Freeman seeks declaratory relief to void the Evergreen Clause and the Guarantee Clause rather than declaratory relief that it is not in breach of those agreements.  The Court disagrees.  The

---

[2]The Defendants argue that the Supreme Court determined in Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for Southern California that ERISA imposes special limitations on the availability of declaratory relief.  Franchise Tax Board, 463 U.S. 1 (1983).  This Court does not need to address this issue because all of the Defendants could bring actions to enforce the Evergreen Clause under the LMRA, and thus, this Court has subject matter jurisdiction to hear Freeman's request for declaratory relief.  Textron, 523 U.S. at 658.

Complaint alleges that: (1) the Evergreen Clause and the Guarantee Clause purport to obligate Freeman to pay the contributions called for in the 2007 NBCWA; (2) Freeman is not making those payments and does not believe that it is obligated to make those payments; and (3) the Defendants are demanding that Freeman make those payments.  Freeman seeks declaratory relief that it is not obligated to make those payments.  These allegations put at issue whether Freeman is in breach of the Evergreen Clause and the Guarantee Clause.  This Court has subject matter jurisdiction under the LMRA to declare whether Freeman is in breach of those clauses.  <u>Textron</u>, 523 U.S. at 658; <u>Stevens Const. Corp. v. Chicago Regional Council of Carpenters</u>, 464 F.3d 682, 683 (7th Cir. 2006).

B.    <u>Count II</u>

Count II asserts, in the alternative, a claim for damages.  For purposes of Count II, the Court assumes that Freeman is obligated to make the disputed pension contributions.  To state a claim for damages, Freeman must allege facts that show that the BCOA owed some duty to Freeman in the negotiation of the 2007 NBCWA and that it breached that duty.  For purposes of Count II, the Court assumes that the Evergreen Clause in the 1978 NBCWA obligated Freeman to pay the pension contributions

13

negotiated by the BCOA in perpetuity.  When read in the light most favorable to Freeman, the Complaint alleges that Freeman, and the other coal companies that agreed to be so bound, authorized BCOA to act as their agent to negotiate these future pension contribution rates with the UMWA, and further, that by accepting the benefits of this perpetual contractual obligation, the BCOA agreed to act as the coal companies' perpetual agent in these future negotiations.  Freeman further alleges that Consol has now taken over the BCOA, and the BCOA effectively negotiated the 2007 NBCWA purely for Consol's benefit in breach of its obligation to act on behalf of all of the companies that agreed to be bound in perpetuity, including Freeman.

These allegations put at issue the parties' intent in 1978 when the Evergreen Clause was added to the 1974 Pension Fund Trust and the NBCWA. The Defendants argue that Freeman obligated itself in 1978 to pay the contributions in perpetuity.  See Pittston, 984 F.2d at 478-79.[3]  The question in Freeman's alternative claim in Count II is whether BCOA agreed, in exchange for that perpetual agreement by the coal companies, to

---

[3]It is unclear at this point whether Freeman disputes that it is bound by the Pittston decision.  The Court, thus, does not address the binding effect of this decision.

act as the agent for these companies in all future negotiations with the UMWA.  The establishment and scope of an agency is a factual issue. Kirkruff v. Wisegarver, 297 Ill.App.3d 826, 830, 697 N.E.2d 406, 410 (Ill. App. 4th Dist., 1998).  At this point, the Court must view the facts in the light most favorable to Freeman.  When viewed in that light, a perpetual agency could have been established in exchange for the perpetual obligation to pay the pension contributions at rates negotiated by BCOA.

The BCOA argues that any agency ended when Freeman withdrew from the BCOA in 1997.  The 1997 withdrawal, alone, does not establish that Freeman cannot prove the continued existence of an agency relationship for the limited purpose of negotiating pension fund contribution rates.  For purposes of ruling on the Motion to Dismiss Count II, the Court assumes that Freeman's withdrawal did not end Freeman's obligation to pay future pension contributions at rates negotiated by the BCOA.  Thus, the parties clearly intended that some obligations would survive the termination of Freeman's membership in the BCOA.  The issue is whether the parties intended that the BCOA's agency relationship for the limited purpose of negotiating pension contribution rates would continue after Freeman's withdrawal from the BCOA.  For purposes of the Motion to

Dismiss, the Court must assume Freeman can prove the existence of that continuing agency. Freeman states a claim.

II.   <u>Transfer of Venue</u>

The Defendants also asks, in the alternative, to transfer venue of this action to the District of Columbia. This Court may transfer venue for the convenience of the parties and witnesses, as well as for the interests of justice, to another District where venue is proper. 28 U.S.C. § 1404(a); <u>Heller Financial, Inc. v. Midwhey Powder Co., Inc.</u>, 883 F.2d 1286, 1293 (7th Cir. 1989). Venue is proper in this District because the Freeman Agreements were negotiated here. <u>Response to Defendants' Motions to Dismiss and/or to Transfer (d/e 39)</u>, attached exhibit, <u>Affidavit of Donald H. Dame</u>, ¶ 7; 28 U.S.C. § 1391. Venue is proper in the District of Columbia because Defendants BCOA and the 1974 Pension Fund are residents of the District of Columbia. <u>Memorandum in Support of BCOA's Motion to Dismiss or, in the Alternative, to Transfer (d/e 22)</u>, attached exhibit, <u>Declaration of Charles S. Perkins, III (Perkins Declaration)</u>, ¶3; <u>D.C. Action Complaint</u>, ¶¶ 2-5; 28 U.S.C. § 1391. The issue, then, is the convenience of the parties and witnesses, and the interests of justice.

In determining the convenience of each proposed forum, the Court

should consider: (1) the plaintiff's choice of forum; (2) the location of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience of the parties. <u>Bryant v. ITT Corp.</u>, 48 F.Supp.2d 829, 832 (N.D.Ill. 1999). The Defendants have the burden of showing that the balance of the relative convenience of the two Districts clearly favors the transferee District. <u>Hotel Constructors, Inc. v. Seagrave Corp.</u>, 543 F.Supp. 1048, 1050 (N.D.Ill., 1982). Deference must be given to a plaintiff's chosen forum. <u>Heller Financial,</u> 883 F.2d at 1293. However, if other factors weigh in favor of the Defendants, transfer may still be appropriate. In considering the interests of justice, the Court must consider whether the District of Columbia can handle the case more efficiently. <u>Coffey v. Van Dorn Iron Works</u>, 796 F.2d 217, 219-20 (7th Cir. 1986).

Freeman's choice of forum weighs in favor of this forum. The convenience of the parties does not weigh in favor of either party particularly. Either Freeman or the Defendants will be required to travel to the other forum.

The location of material events, the access to sources of proof, and the convenience of the witnesses weigh in favor of the District of Columbia.

The Evergreen Clause, the Guarantee Clause in the 1988 NBCWA, and all of the other NBCWAs were negotiated in the District of Columbia.  Perkins Declaration, ¶ 5.  Thus, to the extent that extrinsic evidence would be relevant, the District of Columbia would be more convenient for witnesses who could testify and for access to other sources of proof.  This could be particularly important with respect to Count II, to determine the scope of BCOA's agency to negotiate on behalf of companies such as Freeman.  The Freeman Agreements were negotiated in this District, but the critical Guarantee Clause appears to be based on the Guarantee Clause in the 1988 NBCWA. If so, the District of Columbia would be the more convenient forum to the extent that extrinsic evidence is relevant to the meaning of that clause.  These factors, thus, weigh in favor of transfer.

The interests of justice in this case also weigh in favor of transferring this matter to the District of Columbia.  This action and the D.C. Action Complaint both put at issue the application of the Evergreen Clause and the Guarantee Clause to Freeman.  Allowing both of these actions to proceed in separate courts is inefficient and creates the possibility of inconsistent decisions.  The efficient administration of the judicial system, thus, weighs in favor of consolidating these two matters in the same forum.  See Ferens

v. John Deere Co., 494 U.S. 516, 531 (1990).

Normally, the interests of justice weigh in favor of giving priority to the first filed action, which would be this action. The "first-to-file" rule, however, is not to be rigidly applied when other factors weigh in favor of transfer. Trippe Mfg. Co. v. American Power Conversion Corp., 46 F.3d 624, 629 (7th Cir. 1995). The rule is also given less weight if, like here, the competing actions were filed within a short time of each other and little has been done to advance the first action to trial. Affinity Memory & Micro v. K&Q Enterprises, 20 F.Supp.2d 948, 954-55 (E.D.Va., 1998).

In this case, the balance of the convenience to witnesses and sources of proof weigh in favor of the District of Columbia. In addition, the District of Columbia is the more efficient forum because venue is proper for both actions in the District of Columbia. 28 U.S.C. § 1391; 29 U.S.C. § 1132(e)(2). This Court, however, could not hear the D.C. Action Complaint because Freeman's Virginia co-defendant is not located in this District and would not be subject to this Court's personal jurisdiction. Consolidation would only be possible in the District of Columbia. Considering all of these pertinent factors, the Court concludes that this matter should be transferred to the District of Columbia.

THEREFORE, Defendant United Mine Workers of America's Motion to Dismiss or, in the Alternative, to Transfer (d/e 20), the Motion to Dismiss or, in the Alternative, to Transfer by Defendant Bituminous Coal Operators' Association, Inc. (d/e 21), and the Joint Motion of the United Mine Workers of America 1974 Pension Trust and Michael H. Holland, Micheal W. Buckner, Steven F. Schaab and B.V. Hyler to Dismiss the Complaint or in the Alternative, to Transfer the Case (d/e 25) are ALLOWED in part. The requests to dismiss are DENIED. The requests to transfer venue are ALLOWED. This matter is transferred to the United States District Court for the District of Columbia for all further proceedings. IT IS THEREFORE SO ORDERED.

ENTER:   May 24, 2007.

FOR THE COURT:

_____ s/ Jeanne E. Scott _____
JEANNE E. SCOTT
UNITED STATES DISTRICT JUDGE